UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:15-CV-00594-JHM

JOHN K. HARDEN                                                                               PLAINTIFF

V.

OFFICER KEITH HILLMAN,                                       DEFENDANTS
individually and in his official capacity
as a police officer of Heritage Creek, et al

### MEMORANDUM OPINION & ORDER

This matter is before the Court on motions for summary judgment by defendants Keith Hillman, the City of Heritage Creek ("Heritage Creek") (DN 95), and Thorntons, Inc. ("Thorntons"). (DN 93.) Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

In the early morning hours of August 2, 2014, plaintiff John Harden entered the Thorntons gas station and convenience store at 100 West Broadway in Louisville. Harden was attempting to buy beer but was refused service by the cashier, as he appeared intoxicated. Defendant Hillman was working inside the store providing security, outside of his regular hours as an officer for Heritage Creek. Hillman intervened in the situation and directed Harden to leave the store. Harden did leave but returned a short time thereafter. Hillman verbally directed Harden to leave the premises, but Harden refused. Hillman then physically removed Harden from the store and placed Harden under arrest. Once under arrest, Harden complained about being in pain. Hillman called for emergency medical services, who arrived and transported Harden to University of Louisville Hospital. At the hospital, Hillman was issued a citation and released.

Harden filed this action against Hillman, Heritage Creek, and Thorntons on July 8, 2015. (DN 1.) Harden asserts claims against Hillman for deprivation of constitutional rights (Count I), assault (Count II), false arrest (Count III), and malicious prosecution (Count IV). The complaint asserts that Heritage Creek and Thorntons are liable on all counts for the actions of Hillman. Thorntons previously moved for summary judgment on all counts. (DN 58.) The Court granted the motion as to Counts I and IV but denied it as to Counts II and III. (DN 68.) The parties now move for summary judgment on all remaining claims. (DN 93, 95.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. COUNT I – DEPRIVATION OF CONSTITUTIONAL RIGHTS

Count I asserts that Hillman acted under color of state law when he physically removed Harden from the convenience store and placed him under arrest, thus depriving him of various constitutional rights. (Pl.'s Compl. [DN 1] ¶¶ 7–11.) Count I also asserts that Heritage Creek and Thorntons are vicariously liable for any constitutional violations committed by Hillman, as he was acting within the scope of his employment with both entities. (*Id.* ¶¶ 12–13.) The Court granted summary judgment to Thorntons on Count I, as Sixth Circuit precedent does not allow for private corporations to be held vicariously liable for the constitutional violations committed by its employees or agents. (DN 68, at 4–5) (quoting *Meinhart v. Campbell*, 2008 WL 1860273, at *1 (W.D. Ky. Apr. 24, 2008), and *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)).

**1. Heritage Creek**

Heritage Creek is entitled to summary judgment on similar grounds. Municipal governments are considered "persons" who may be sued under § 1983, but the unconstitutional act at issue must be performed pursuant to a governmental policy or custom in order to establish municipal liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Further, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Thus, to the extent Harden seeks to hold Heritage Creek vicariously liable for constitutional violations committed by Hillman, such claims are precluded by *Monell*.

Harden also asserts in his complaint that Heritage Creek is liable under Count I for its own negligence in failing to train and supervise Hillman. (Pl.'s Compl. [DN 1] ¶ 14.) While a municipality may be liable under § 1983 when the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants," *City of Canton v. Harris*, 489 U.S. 378, 392 (1989), Harden has presented no facts upon which a reasonable juror could conclude that Heritage Creek failed to train or supervise Hillman. He only mentions this theory of liability once in his response to Thornton's motion, stating that the testimony of the Heritage Creek Police Chief demonstrates that Heritage Creek "did not properly train Officer Hillman for his job as a police officer when moonlighting." (DN 100, at 6.) But his only support for this is a deposition that he has failed to make part of the record, limiting the Court's ability to examine the evidence and conclude whether the Police Chief's deposition supports his failure to train claim. The record before the Court contains no evidence on which a reasonable juror could conclude that Heritage Creek acted deliberately indifferent to Harden by failing to train and supervise Hillman. (*See* Dep. Hillman [DN 95-4] at 14:16–20:5) (discussing training received, including that from Heritage Creek). Therefore, summary judgment is appropriate.

**2. Officer Hillman**

Finally, Hillman has moved for summary judgment as to Count I. Harden has sued Hillman in both his individual and official capacities. However, "[a]s long as the government entity [for which the defendant works] receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted). Therefore, the same analysis applies to the official capacity claims against Hillman as that of the claims against Heritage Creek, and Hillman's motion for summary judgment will be granted on those claims.

As for the individual capacity claim, Hillman argues that he is entitled to qualified immunity. "In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (internal quotation marks omitted). However, when "a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2006) (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)). Hillman focuses on the first prong of the test for qualified immunity and argues that no constitutional violations occurred. Harden's response fails to address the § 1983 claim against Hillman.[1] However, because he has presented facts related to the force used during the arrest and whether probable cause existed to arrest him, the Court will consider whether Harden's Fourth Amendment protections against excessive force and arrest without probable cause were violated.

**a. Excessive Force**

"The Fourth Amendment prohibits law enforcement officers from using excessive force when making an arrest." *Smith v. City of Troy*, 874 F.3d 938, 943 (6th Cir. 2017) (per curiam) (citing *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006)). "In order to comply with the Fourth Amendment, an officer's use of force must be objectively reasonable under the totality of the circumstances." *Id.* (citing *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016)). "In

---

[1] Hillman argues that Harden's failure to respond to the motion for summary judgment constitutes a waiver of his § 1983 claim against him. *See Scott v. Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"). However, despite Harden's failure to respond, the Court must still ensure that Hillman has otherwise shown that he is entitled to summary judgment. *See Carver v. Bunch* , 946 F.2d 451, 455 (6th Cir. 1991) (court must ensure movant has met its burden under Rule 56 before granting summary judgment, even if adverse party has not responded).

evaluating whether a police officer used excessive force on a particular occasion, the court must view the situation from the perspective of a reasonable officer on the scene at the time and without the benefit of 20/20 hindsight." *Id.* at 943–44 (citations omitted). The Court should consider "the severity of the crime at issue, whether the suspect posed a threat to the officers or others, and whether the suspect was actively resisting arrest or attempting to avoid arrest by fleeing." *Id.* at 944 (citations omitted).

There are genuine factual disputes that preclude finding that Hillman is entitled to qualified immunity on the excessive force claim. The parties dispute how much force was used and why it was used. (Dep. Harden I [DN 95-2] at 93:6–94:5 (indicating that Hillman "grasped me with a bear hug, fully wraps me up, picks me up about three or four feet in the air, slams me down on the floor, directly to my left side, my left shoulder, back of my head," and that no resistance was offered to the arrest); Dep. Hillman [DN 95-4] at 36:3–42:23 (stating that he used a "left straight arm bar takedown" on Harden, made "fluid" motions without hesitation, used only "the necessary force to take him to the ground," and that Harden necessitated the use of force by resisting the arrest).) Of particular importance is the testimony of Harden in which he indicates that he was not resisting arrest but instead told Hillman to "take me to jail" while placing his hands on the checkout counter. (Dep. Harden I [DN 95-2] at 93:14–18.) Further, there are disputes as to whether Harden posed a threat to Hillman or others. Hillman testified that other customers were becoming "alarmed and annoyed" by Harden's behavior, but the record is unclear as to whether Harden ever posed a physical threat to anyone in the store. (Dep. Hillman [DN 95-4] at 51:25–52:2.) And finally, the crime Hillman told Harden he was being arrested for, criminal trespass in the third degree, is a violation, and the three crimes actually listed in the citation (disorderly conduct in the first degree, resisting arrest, and public

intoxication) are all misdemeanors, raising doubts as to whether the amount of force used was commensurate with the severity of the crimes. *See* KRS §§ 511.080, 520.090, 525.055, 525.100. Therefore, the Court finds that a reasonable juror could conclude that Hillman violated Harden's Fourth Amendment right to be free from excessive force. *See Smith*, 874 F.3d at 944–45 (officer employed more force than was necessary when he took plaintiff to ground with leg sweep when there was factual dispute as to whether plaintiff resisted the officer); *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (passive resistance does not justify substantial use of force).

Further, taking the evidence in a light most favorable to Harden, he has shown that Hillman violated his clearly established rights. "[T]he right to be free from physical force when one is not resisting the police is a clearly established right." *Baker v. Union Tp.*, 587 F. App'x 229, 235 (6th Cir. 2014) (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)). Harden testified that he was told by Hillman that he could either leave or go to jail. He then said, "Well, take me to jail," with his hands on the store counter. At that time, Hillman grabbed him, lifted him, and took him to the ground with enough force to injure the left side of his body. A reasonable juror could credit this testimony and find that Hillman violated Harden's clearly established Fourth Amendment rights. Therefore, Hillman is not entitled to summary judgment on qualified immunity grounds.

### b. Probable Cause

Turning to the allegations that Hillman violated Harden's Fourth Amendment right to be free from arrest without probable cause, the Court finds that Hillman is entitled to qualified immunity. Taking the evidence in a light most favorable to Harden, he cannot demonstrate that probable cause did not exist for his arrest. Harden admits in his deposition to the basic facts that

7

led to his arrest. He stated that he went to Thorntons to purchase beer but was refused service because he appeared intoxicated. (Dep. Harden I [DN 95-2] at 90:14, 91:15–18.) He said that Hillman then told him to "get out of the store right now and don't come back." (*Id.* at 92:3–9.) Harden then left but soon returned to Thorntons to buy chips. (*Id.* at 92:12–25.) Once inside Thorntons the second time, Harden stated that Hillman confronted him for returning to the store and told him to "get out of the store right now and don't come back, or I'm going to take you to jail." (*Id.* at 93:6–17.) Harden then said, "Well, take me to jail," and Hillman seized him. (*Id.* at 93:17–22.) This testimony is largely consistent with that of Hillman, and there is no dispute as to any material fact. (*See generally* Dep. Hillman [DN 95-4] at 45:17–57:3.)

Under Kentucky law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." KRS § 511.080(1). Harden points to no authority in support of his argument that he was not trespassing under the statute when he remained in Thorntons after being told to leave by Hillman, and the Court finds that probable cause existed for Harden's arrest. *See Com. v. Fields*, 194 S.W.3d 255, 257 (Ky. 2006) (finding probable cause to arrest for criminal trespass in the third degree when defendant "was loitering in an area posted with no trespass, and no loitering signs"). Thus, no constitutional violation occurred, and Hillman is entitled to summary judgment on this claim.

### B. COUNT II – ASSAULT AND BATTERY

Count II alleges that Hillman "willfully and intentionally assaulted" Harden,[2] causing injuries to Harden's back, neck, central nervous system, and body as a whole. (Pl.'s Compl. [DN

---

[2] While the complaint describes the claim as one for assault, the conduct described better reflects the tort of battery, since there was an actual touching of Harden rather than just a threatened one. *See Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Harden appears to recognize this in his response to Thorntons' motion for summary judgment, as he now labels his claim as one of "assault and battery." (DN 63.)

1] ¶¶ 16–17.) It also alleges that Heritage Creek and Thorntons are vicariously liable for Hillman's conduct.

**1. Thorntons**

Beginning with Thornton's motion for summary judgment, it argues that it cannot be held vicariously liable for any torts committed by Hillman since he was not an agent or employee of Thorntons but rather an independent contractor. Both Hillman and Heritage Creek admit that Hillman was an independent contractor and not an employee of Thorntons, but Harden disputes this and argues that Hillman was employed by Thorntons.

"As a general rule, an employer is not liable for the torts of an independent contractor in the performance of his job." *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994). Nine factors are to be considered by the Court in answering the legal question of whether the alleged tortfeasor was an employee or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer; and

> (i) whether or not the parties believe they are creating the relationship of master and servant.

*Johnston v. Sisters of Charity of Nazareth Health Sys., Inc.* 2003 WL 22681562, at *2 (Ky. Ct. App. Nov. 14, 2003) (citing *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756–57 (Ky. 1955)). The Court will consider each.

Factor (a) weighs in favor of Hillman being an independent contractor. The record demonstrates that Thorntons had an oral agreement with Russell Miller, of the Louisville Metro Police Department, who would assign off-duty police officers to various Thornton's locations to provide security. (Dep. Wright [DN 95-5] at 66:5–10.) Miller acted as Hillman's supervisor, and Thorntons did not consider Hillman to be its employee. (*Id.* at 45:3–21.) Hillman would receive his pay in the form of money orders or cash from Miller, and he never received a check from Thorntons for his work. (Dep. Hillman [DN 95-4] at 76:6–22.) And Hillman testified that he retained discretion as to how to perform his job as a peace officer. (*Id.* at 120:12–121:6.) Thus, because Thorntons had little control over the details of Hillman's work, factor (a) favors Hillman being an independent contractor.

Next, factor (b) also indicates Hillman was an independent contractor, as he was engaged in the business of being a security officer. This differs from the business of Thorntons, a gas station and convenience store. *See Gordon v. Jones*, 2010 WL 3341206, at *3 (W.D. Ky. Aug. 20, 2010) ("The occupation of security guard is separate and distinct [from] Greyhound's business of providing bus transportation"). As for factor (c), the record shows that Hillman retained discretion to provide security as he saw fit and was not supervised by any Thornton's employee. (Dep. Hillman [DN 95-4] at 120:12–121:6; Dep. Wright [DN 95-5] at 45:3–21). And "the skill required in the occupation of a security guard is not that of other . . . employees" at

Thorntons, meaning that factor (d) also favors Hillman being an independent contractor. *Gordon*, 2010 WL 3341206, at *3.

As for factor (e), Thorntons provided the place of work for Hillman, but all other tools and instrumentalities were provided by Hillman. (Dep. Hillman [DN 95-4] at 55:13 ("I had a uniform on"), 46:25–47:3 ("And I knew I couldn't use mace inside because . . . the ventilation system . . .").) Hillman does, however, have a lengthy history of providing security for Thorntons at different locations from 1993 to 2014. (*Id.* at 71:14–72:12.) And he was paid by the hour, rather than by the job. (*Id.* at 79:22–24.) Factors (f) and (g), therefore, favor Hillman being an employee. But factors (h) and (j) cut against Hillman being an employee, as security work was not a part of the regular business of Thorntons, and both parties testified that they believed Hillman was an independent contractor. (*Id.* at 72:9–12; Dep. Wright [DN 95-5] at 68:8–13.)

Based on the record, the Court concludes that Hillman was an independent contractor of Thorntons and not an employee. Thorntons was not in the business of providing security services; instead, it contracted out its need for security to Miller, who provided off-duty police officers, including Hillman, to provide this skilled service. *Accord Gordon*, 2010 WL 3341206, at *3. Harden's arguments to the contrary are unavailing. Harden focuses on whether Hillman was acting with the purpose to serve Thorntons when he arrested Harden, since Hillman took action after other customers became alarmed at the situation. (Dep. Hillman [DN 95-4] at 46:15–23.) But this only becomes the relevant inquiry once it is established that Thorntons was Hillman's employer. *See Coleman v. Ferrell's Snappy Serv. of Hopkinsville, Inc.*, 2010 WL 5393855, at *4 (W.D. Ky. Dec. 22, 2010) ("An *employer* is not vicariously liable for an intentional tort of an *employee* not actuated by a purpose to serve the employer") (quoting *Am.*

*Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002)) (emphasis added). Because Thorntons did not employ Hillman, the Court need not consider Hillman's purpose in acting, as there can be no vicarious liability for Thorntons arising from the actions of an independent contractor. Therefore, its motion for summary judgment will be granted.

**2. Heritage Creek**

Next, Heritage Creek moves for summary judgment on the basis that Hillman was not acting within the scope of his employment with the city at the time of the incident. "The Kentucky Supreme Court has adopted the Restatement (Third) of Agency's definition of vicarious liability." *Halcomb v. Black Mountain Resources, LLC*, 46 F. Supp. 3d 707, 711 (E.D. Ky. 2014) (citing *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51–52 (Ky. 2008)). Under the Restatement's definition,

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
>
> (3) For purposes of this section,
>
>> (a) an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and
>>
>> (b) the fact that work is performed gratuitously does not relieve a principal of liability.

Restatement (Third) of Agency § 7.07 (2006). When the employee's conduct amounts to an intentional tort, an employer is only vicariously liable if the employee acted with the purpose to serve the employer by committing the tort. *See Coleman*, 2010 WL 5393855, at *4 (W.D. Ky.

Dec. 22, 2010) (quoting *Am. Gen.*, 74 S.W.3d at 692). The same analysis applies to claims against municipalities for the actions of off-duty police officers:

> a municipality may or may not be liable for acts done or injuries inflicted by an off-duty policeman, depending on whether the policeman was acting in furtherance of the municipality's business and incident to the performance of his duties. Where, however, the act was clearly not in furtherance of municipal business, there is no liability on the part of the city.

*Ellis v. Jordan*, 571 S.W.2d 635, 638 (Ky. 1978).

Heritage Creek is entitled to summary judgment on this claim, as Harden has not presented any facts demonstrating that Hillman was acting within the scope of his employment with Heritage Creek at the time of the incident. Instead, the record reflects that Hillman was off-duty and outside the city limits of Heritage Creek when he arrested Harden. (Dep. Wright [DN 95-5] at 55:19–22.) The only evidence Harden points to in support of his argument that Hillman was acting within the scope of his employment is a statement by the Heritage Creek Police Chief that Hillman was subject to Heritage Creek's expectations, policies, practices, and procedures while working at Thorntons. But again, Harden has not provided the Court with this deposition to read and evaluate. And the record is devoid of evidence showing how Hillman was acting "to serve any purpose of" Heritage Creek. Restatement (Third) of Agency § 7.07(2) (2006). Nor is there evidence showing that Hillman was acting "in furtherance of the municipality's business" when he arrested Harden outside the city limits of Heritage Creek for reentering the store after being told to leave and causing a disturbance. *Ellis*, 571 S.W.2d at 638. Therefore, summary judgment is appropriate.

### 3. Officer Hillman

Finally, Hillman moves for summary judgment on the basis that he is entitled to qualified official immunity. Under Kentucky law,

> [q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523. Hillman argues that he was acting within the scope of his authority as a peace officer and in good faith when he took the discretionary action of using force against Harden to arrest him. Harden, however, contests that Hillman was acting in good faith when he arrested him.

"[B]ad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* The standard for bad faith "is materially similar to the one a plaintiff must meet to overcome a federal defense of qualified immunity." *King v. Taylor*, 694 F.3d 650, 665 (6th Cir. 2012). Taking the evidence in a light most favorable to Harden, he has demonstrated that there are material issues of fact as to whether Hillman acted in good faith when he used force to arrest him. "Kentucky case law defines common law civil battery simply as any unlawful touching of the person of another[.]" *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (quotations omitted). No battery occurs when a police officer makes a lawful arrest of an individual. *Sanders v. Maupin*, 2017 WL 3273631, at *8 (E.D. Ky. Aug. 1, 2017) ("Police officers are privileged to commit a battery pursuant to a lawful arrest") (citations omitted). But when excessive force is used to effectuate

the arrest, it can constitute battery. *Ali v. City of Louisville*, 2006 WL 2663018, at *8 (W.D. Ky. Sep. 15, 2006). As stated previously, the parties dispute how much force was used and why it was used. (Dep. Harden I [DN 95-2] at 93:6–94:5 (indicating that Hillman "grasped me with a bear hug, fully wraps me up, picks me up about three or four feet in the air, slams me down on the floor, directly to my left side, my left shoulder, back of my head," and that no resistance was offered to the arrest); Dep. Hillman [DN 95-4] at 36:3–42:23 (stating that he used a "left straight arm bar takedown" on Harden, made "fluid" motions without hesitation, used only "the necessary force to take him to the ground," and that Harden necessitated the use of force by resisting the arrest).) If the Court draws all inferences in favor of Harden, a reasonable juror could conclude that more force than necessary was used to effectuate the arrest. Further, there is evidence that Hillman was trained on the proper use of force, showing that he "presumptively would have known" that such use of force would violate Harden's clearly established right to be free from the use of excessive force during an arrest. (Dep. Hillman [DN 95-4] at 17:17–18) (indicating that basic training included training on "use of force"). Therefore, questions of fact remain as to whether Hillman acted in good faith in using the force that he did, and summary judgment is inappropriate as to Hillman on Count II.

### C. COUNT III – FALSE IMPRISONMENT

Count III asserts that Hillman falsely arrested and unlawfully imprisoned Harden under Kentucky law, and that as Hillman's employer, Thorntons and Heritage Creek are vicariously liable for his actions. The same analysis in Count II as to Thorntons and Heritage Creek is equally applicable to Count III. Hillman was not an employee of Thorntons but rather an independent contractor, and he was not acting within the scope of his employment with Heritage

15

Creek when he arrested Hillman. Therefore, summary judgment will be granted to both on Count III.

Hillman raises the same argument in favor of summary judgment as he did for Count II, in that he is entitled to qualified official immunity. Harden similarly opposes summary judgment on the grounds that Hillman acted in bad faith. But the Court finds that there is no genuine dispute as to whether Hillman acted in bad faith. Just as with Harden's § 1983 claim for arrest without probable cause, he admits in his deposition to the basic facts that led to his arrest. He stated that he went to Thorntons to purchase beer but was refused service because he appeared intoxicated. (Dep. Harden I [DN 95-2] at 90:14, 91:15–18.) He said that Hillman then told him to "get out of the store right now and don't come back." (*Id.* at 92:3–9.) Harden then left but soon returned to Thorntons to buy chips. (*Id.* at 92:12–25.) Once inside Thorntons the second time, Harden stated that Hillman confronted him for returning to the store and told him to "get out of the store right now and don't come back, or I'm going to take you to jail." (*Id.* at 93:6–17.) Harden then said, "Well, take me to jail," and Hillman seized him. (*Id.* at 93:17–22.) This testimony is largely consistent with that of Hillman, and there is no dispute as to any material fact. (*See generally* Dep. Hillman [DN 95-4] at 45:17–57:3.) And based on this testimony, Hillman is entitled to summary judgment, as Harden cannot establish that Hillman acted in bad faith by arresting Harden for criminal trespass.

Under Kentucky law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." KRS § 511.080(1). Harden points to no authority in support of his argument that he was not trespassing under the statute when he remained in Thorntons after being told to leave by Hillman, and the Court finds that probable cause existed for Harden's arrest. *See Fields*, 194 S.W.3d at 257 (finding probable

cause to arrest for criminal trespass in the third degree when defendant "was loitering in an area posted with no trespass, and no loitering signs"). Neither does Harden offer any authority to support his contention that he could not have been arrested for a crime that is only a violation. *See* KRS § 511.080(2). To the contrary, Kentucky law specifically authorizes officers to make arrests for violations of KRS § 511.080 when they have been committed in the officer's presence. KRS § 431.005. Here, Harden trespassed in the presence of Hillman, as he was the individual whose dispersal orders revoked Harden's license to be on the premise. Therefore, Harden cannot demonstrate that Hillman acted in bad faith by arresting him. Further, Hillman has met the other factors for establishing that he is entitled to qualified official immunity, as he was performing a discretionary function within the scope of his official authority. *Jones v. Bennett*, 2016 WL 4487189, at *2 (Ky. Aug. 25, 2016) (unpublished) ("Decisions about how to investigate and apprehend a criminal suspect are an example of discretionary conduct warranting qualified immunity"). Thus, Hillman is entitled to summary judgment.

### D. COUNT IV – MALICIOUS PROSECUTION

Count IV asserts that Hillman lacked probable cause and acted with malicious intent in bringing charges against Harden, and that as Hillman's employer, Thorntons and Heritage Creek are liable. The Court previously held that Thorntons was entitled to summary judgment, as Harden could not establish that the proceedings against him were terminated in his favor, a necessary element for a claim of malicious prosecution. (DN 68, at 7–10.) This analysis is equally applicable to Hillman and Heritage Creek. Therefore, summary judgment is appropriate as to all defendants on Count IV.

## IV. REQUEST FOR HEARING

Thorntons has requested a hearing on its motion for summary judgment. However, the Court feels sufficiently advised to decide the issues before it at this time without conducting a hearing. Therefore, that request is denied.

## V. CONCLUSION

Therefore, for the reasons stated above, **IT IS HEREBY ORDERED** that the motion for summary judgment by defendant Thorntons, Inc. (DN 93) is **GRANTED**, and the motion for summary judgment by defendants Keith Hillman and the City of Heritage Creek (DN 95) is **GRANTED IN PART** and **DENIED IN PART**. Counts III and IV are **DISMISSED** as to all defendants, and Counts I and II are **DISMISSED** as to Thorntons and Heritage Creek only. Counts I (§ 1983 excessive force) and II (assault and battery) against Hillman remain pending.

*[Signature]*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**
July 24, 2018

cc: Counsel of Record